Maria Anna Vogel, Respondent, *v.* Maria Lucia Lehritter et al., Respondents, et al., Appellants.

L., a citizen of this State, who was domiciled in Germany, died in that country. She owned real estate there and in this State. In an action for partition of the real estate here, the following facts were admitted: Prior to her death, she applied to a notary to draw her will. That officer drew up an instrument, in form a will, which, by its terms, gave the real estate in question to one of the defendants. L. signed the paper at the end thereof, in the presence of the notary, but there was no other signature thereto. Said paper was placed by L. in an envelope, which was sealed up by her. The notary then wrote upon the envelope a statement to the effect that he, as notary, certified by his signature and that of two witnesses, whose names were given, with the addition of his official seal, that, according to the oral declaration of L., her last will was contained in the envelope. This writing was, before signature, read aloud to L. and the witnesses, and she then handed the envelope to the notary, declaring orally that the envelope contained her last will, and in case it should not be legal, as such, that she wished to have it carried into effect "as a codicil, gift *causa mortis*, or in any legal way possible," and that she revoked all former wills. Immediately thereafter, and at the request of the testatrix, and in the presence of each other, the said notary and the witnesses signed their names as witnesses at the end of the statement upon the envelope, and he added his official seal. The notary then, in the presence of all the witnesses, drew up another instrument, which stated in substance that L., who was known to him, appeared before him and requested him to receive upon deposit her last will; that he procured two "documentary witnesses," and convinced himself of the intellectual capacity of L. to dispose of her property; that she had handed to him the envelope, and made the oral declaration above stated, which was set forth; that he then, through his signature, the witnesses and his seal, did certify that, according to the oral declaration of L., the envelope contained her last will. This paper was signed by L., the two witnesses and the notary, and he, at the request of L., received the paper inclosed in the envelope on deposit as her last will; he folded the paper last described and placed the envelope with the inclosure in

the folds. The execution of the paper so inclosed in the manner set forth, constituted the making of a valid will for the passing of title to real estate situated in Bavaria, where the transaction occurred, and it was then admitted to probate. *Held,* that there was not a substantial compliance with the requirements of the statute of this state in reference to the execution of wills, and so, that there was no valid testamentary disposition of the real estate in question, and as to it L. died intestate. Reported below, 64 Hun, 308.

(Argued June 22, 1893 ; decided October 3, 1893.)

Appeal from order of the General Term of the Supreme Court in the first judicial department, made April 6, 1892, which denied a motion by defendant Charles Lehritter for a new trial.

This action was brought for the purpose of obtaining a partition of two lots in West Thirty-eighth street in the city of New York, which formerly belonged to one Maria Anna Lehritter, who died in Germany, January 29, 1890. The complaint alleged that the plaintiff, among others, was an heir at law of the former owner, Mrs. Lehritter, and that she had died intestate, and that a document which had been presented as her last will and testament had not been duly executed and published as required by the statute of New York, and in consequence thereof the real estate of which she died seized had descended to her heirs at law. The defendant Charles Lehritter denied that the deceased had died intestate, and he alleged that she had duly executed and published her will in the city of Wuerzburg, Bavaria, Germany, on or about the 13th day of October, 1882. The whole controversy arises over the question whether the facts show a due execution and publication of a will by Mrs. Lehritter in Germany at the time and place stated. If the paper writing were a duly executed and published will, then the defendant Charles Lehritter would take as devisee the real property which was described in the complaint; otherwise he would take nothing. The action was referred to a referee, who found that the paper was not duly executed and published, and that Mrs. Lehritter had died intestate, and judgment for partition, etc., was, therefore, ordered. The evidence upon which the case was decided

is undisputed, and so far as material to this question it consists of facts agreed upon by the parties.

By this statement of facts it appears that Mrs. Lehritter was a citizen of New York at the time of her death, and was then domiciled in Germany and was the owner of the real estate mentioned in the complaint. She left certain heirs at law who were descendants of her sisters and brother. The defendant Charles Lehritter was not one of such heirs, and his only claim depended upon proving the will set up in the pleadings. The statement in the third and following paragraphs then proceeds to give in detail all the facts relating to the drawing, execution and publication of the alleged will, as follows:

*Third.* On the 13th day of October, 1882, at Wuerzburg, Bavaria, Ulrich Huth, royal Bavarian notary, a public official, at the request of the said Mary Anna Lehritter, she being then domiciled in Bavaria, formulated, in the German language, a paper writing, which having been read to and understood by her, she thereupon subscribed her signature thereto, at the end of the said paper writing, in the presence of the said Ulrich Huth only, royal notary as aforesaid.

*Fourth.* The following is a correct translation into the English language of the said paper writing:

"My Last Will.

"1. Considering my circumstances as to property, I possess here a house and lot with appurtenances in Sanderglacis, Number 15½, of the approximate value of (30,000 M.) thirty thousand marks, and personal property of the approximate value of (6,000 M.) six thousand marks.

"Furthermore, I possess in New York two houses and lots with appurtenances, Nos. 307 and 309 West Thirty-eighth street, between Eighth and Ninth avenues; in addition to which, the lots are also my property, of the approximate value of ($12,000) twelve thousand dollars.

"Furthermore, I have mortgages in America, loaned upon different pieces of property of the total approximate value of nineteen thousand seven hundred dollars ($19,700).

"II. I appoint as my sole and universal heir and legatee of what will hereafter be my estate Maria Anna Lehritter, daughter of the tailor Nickolaus Lehritter, my brother-in-law, and of my niece, his wife Maria Lucia Lehritter; she was born in New York on the sixth° day of January, 1861; she was adopted and educated by myself and my late husband, Johann Adam Lehritter, as our only child, and also resides at the present time with me.

"She, my principal legatee, shall, however, be bound to pay the following legacies:

"The following persons shall receive as follows:

"1. Karl Lehritter, born Edelmann, dealer in wines in New York, the two houses and lots in New York, as more particularly described above.

"2. Johann Lehritter, born Edelmann, brother of Karl Lehritter, ($2,000) two thousand dollars. His present place of residence is unknown to me.

"3. My brother-in-law, Nickolaus Lehritter, tailor in New York ($1,000) one thousand dollars.

"4. My niece, the wife of the former, Maria Lucia also ($1,000) one thousand dollars.

"5. Their three children, at this time infants, to wit: (*a*) Dory; (*b*) Willy; (*c*) Karry (Lehritter), each of these ($1,000) one thousand dollars. This legacy of three thousand dollars shall be separate property of the legatees and their parents shall have the usufruct thereof until the end of the twenty-first year of the life of these children, up to which time these legacies shall also be mutually inheritable among the children.

"6. Peter Lehritter, painter, my brother-in-law, ($2,000) two thousand dollars.

"7. To the three sons of Dorothea Welz, wife of a carpenter in Bobstadt, District of Boxberg, in Baden, viz., Karl, Frederick and William (Welz) each (1,000 M.), one thousand marks.

"8. Margaretha Heer, born Boetzel, my niece, in Laudenbach, District Mergentheim, (1,000 M.), one thousand marks.

"This is my free well considered last will, which I have myself read and signed in execution.

" Wuerzburg, the thirteenth day of October, one thousand eight hundred and eighty-two.

" MARIA ANNA LEHRITTER."

That the real property described in the foregoing paper writing as " 307 and 309 West Thirty-eighth street, between Eighth and Ninth avenues," in the city of New York, is the same as that described in the first subdivision hereof.

*Fifth.* That the said paper writing described in subdivision fourth hereof never had upon any part of it the signature of any person or persons whatsoever, except the signature of Maria Anna Lehritter, as aforesaid, and that such signature was subscribed at the end of such paper writing.

*Sixth.* That immediately thereafter, and in the presence of the said Huth, the said paper writing described in subdivision fourth hereof was, without any alteration whatever, placed in an envelope by the said Maria Anna Lehritter, deceased, which said envelope was thereupon immediately sealed up by her with her seal, which bore the letters " M. A. L., New York." That said envelope never contained inclosed in it anything other than the paper writing described in subdivision fourth hereof. That immediately after such sealing had been completed there were written by the said Huth on the outside of said envelope the following words : " Testament of Mrs. Maria Anna Lehritter, widow of a private citizen here. The undersigned Royal Notary hereby certifies by his signature and that of the two witnesses who were called in, with the addition of his official seal, that, according to the oral declaration of Mrs. Maria Anna Lehritter, there is contained in this envelope her last will.

" Wuerzburg, the 13th of October, 1882."

Which words were thereafter and before signature read aloud to the said Maria Anna Lehritter and the witnesses hereinafter named.

*Seventh.* Immediately thereafter, and in the presence and hearing of Johann Georg Gutbrod and Franz Jaeger, two competent witnesses, the said Maria Anna Lehritter handed

the said envelope containing the aforesaid paper writing, and inscribed and sealed up as aforesaid, to the said Huth, and at the same time made the following declaration orally:

"In the envelope which I have just handed you there is contained my last will."

"In case this should not be legal as a last will and testament, I wish to have it carried into effect as a codicil, gift *causa mortis,* or in any legal way possible, and it is the result of my free will. At the same time I revoke all former testamentary documents and directions, especially the testament which was made before the present notary on the fourteenth of August, one thousand eight hundred and seventy-five, and declare the same to be revoked and null and void."

*Eighth.* Immediately thereafter, and at the request of the testatrix, and in her presence, and in the presence of each other, the said Huth, Gutbrod and Jaeger did sign their names as witnesses on the said envelope at the end of the statement set forth in subdivision sixth, and the said Huth did also add his official seal to his signature. The said envelope contained no other inscription, signature or writing than those hereinbefore mentioned.

*Ninth.* Immediately thereafter, and in the presence of all the persons before named, the said notary drew the following instrument:

"To-day, on the thirteenth day of October, one thousand eight hundred and eighty-two (13 October, 1882), there appeared before me, Ulrich Huth, Royal Bavarian Notary, with an office at Wuerzburg, in my office at this place, Mrs. Maria Anna Lehritter, born Boetzel, known to me with respect to her name, position and residence, and requested me to receive upon deposit her last will.

"After I had then procured two documentary witnesses in the persons of the two men, known to me with respect to their names, position and residence:

"1. Johann Georg Gutbrod, grinder;

"2. Franz Jaeger, blacksmith,

both of this place, against whom there were, according to their

own statements, no objections which made them incapable of being witnesses, and had also convinced myself by a suitable conversation with Mrs. Maria Anna Lehritter, of her intellectual capacity to dispose of her property, Mrs. Maria Anna Lehritter handed to me an envelope with the superscription, 'Testament of Mrs. Maria Anna Lehritter, widow of a private citizen here,' sealed once with a private seal, which bore the letters, 'M. A. L., New York,' and thereupon declared orally :

"In the envelope which I have just handed you there is contained my last will. In case this should not be legal, I wish to have it carried into effect as a codicil, gift *causa mortis*, or in any legal way possible, and it is the result of my free will. At the same time I revoke all former testamentary documents and directions, especially the testament which was made before the present notary on the fourteenth day of August, one thousand eight hundred and seventy-five, and declare the same to be revoked and null and void.

"Thereupon, I, the notary, through my signature with the above, the witnesses, and with the addition of my official seal upon the envelope, did certify that according to the oral declaration of Maria Anna Lehritter ; in this envelope there is contained her last will, and here received it among my official documents.

"About these proceedings, I, the notary, have drawn this present document, read it to Mrs. Maria Anna Lehritter, and both the witnesses, in the uninterrupted presence of all of whom, with me, the notary, all these proceedings had taken place, and have signed it in company with all.

"In testimony thereof.

                    "MARIA ANNA LEHRITTER,
                    "JOH. GEORG GUTBROD,
                    "FRANZ JAEGER.

"[L. S.]    (Signed) HUTH,
                    "*Royal Notary.*"

*Tenth.* That the statements in the said notarial instrument of what said notary and the said Maria Anna Lehritter,

deceased, and the said Gutbrod and Jaeger severally did or said, are true, and that the paper writing which the said Maria Anna Lehritter, deceased, then requested the said notary to receive on deposit as her last will, is the same writing, without any addition or change, then or at any other time which is described in subdivision fourth hereof, and which was contained in the aforesaid envelope, which was at that time sealed up, written upon and indorsed as aforesaid.

*Eleventh.* That the said instrument described in subdivision ninth hereof was subscribed by the said Maria Anna Lehritter, Gutbrod, Jaeger and Huth at the end thereof, in the presence of each other, and all the statements therein set forth as having been made by the said Maria Anna Lehritter were made to and in the presence and hearing of the said Huth, Jaeger and Gutbrod, and that immediately thereafter and in the presence of the said Maria Anna Lehritter, Gutbrod and Jaeger, the said Huth placed the said envelope while sealed up and inclosing the paper writing described in subdivision fourth herein, loosely between the leaves of the said instrument, the said instrument being a separate sheet of paper folded in the middle, and that immediately thereupon and in the presence of the persons aforesaid, the said notary took the said instrument with the said envelope and contents placed between its leaves as aforesaid, and deposited the same among his official documents in a place in the office of the said notary kept for that purpose, where all the said papers remained undisturbed until after the death of the testatrix. That after the death of the testatrix all the said papers were so found by the said notary, the said envelope being found sealed up with its contents and superscriptions intact and still lying separately and loosely between the leaves of the said instrument. That after the death of the testatrix the said Huth took the said envelope containing the said paper writing from and between the leaves of the said instrument and made a certified copy of the said instrument, and personally deposited with the Royal District Court Number I in Wuerzburg, Bavaria, the said envelope, sealed up as aforesaid and containing the said paper writing, together with

a copy of the said instrument certified by himself as notary as aforesaid; and that he kept in his possession the original of said instrument.

*Twelfth.* The said paper writing first aforesaid as signed under the circumstances hereinbefore stated, with the inclosing and sealing thereof in an envelope, and the making of the indorsement on such envelope with the accompanying circumstances, and the making and signing of the instrument set forth in subdivision ninth hereof, as hereinbefore stated, constituted the making a valid will for the passing of the title to real estate situated in Bavaria ; it has there been admitted to probate, none of said writings can be removed from Bavaria where they now remain, and none of the originals can be produced, such production being contrary to the laws of Bavaria. All the transactions hereinbefore stated took place at one meeting of the persons herein named, said meeting being held solely for the purpose described.   The said Huth was a public officer of Bavaria, and as such authorized by the laws thereof to perform all the acts hereinbefore stated to have been by him performed, and such performance having been in compliance with the laws of Bavaria in relation to the execution, custody, authentication and proof of wills and papers relating thereto.

*Thirteenth.* Nothing else took place and nothing else was done at any time by or on the part of any person herein mentioned germane to the issues in this action other than is recited in this stipulation.   All statements herein contained are to be taken as relating only to questions of fact and not as being conclusions of law.

*Fourteenth.* At the date of all the transactions hereinbefore set forth the said Maria Anna Lehritter was of sound mind and of full testamentary capacity.

*Fifteenth.* The person described as " Karl Lehritter, born Edelmann, dealer in wines in New York," in the paper writing first described, is the defendant Charles Lehritter, in this action.   Maria Anna Lehritter, who is described herein, is the same person who is called by that name in the complaint in

this action ; the person described in the paper writing in sub-division fourth hereof as "Maria Anna Lehritter, daughter of the tailor, Nickolaus Lehritter," is the plaintiff herein, Maria Anna Vogel; the defendant Sebastian Heer is the husband of the defendant Margaretha Heer ; and the defendant Otto A. Vogel is the husband of the said Maria Anna Vogel, and the plaintiff and all of the defendants are over the age of twenty-one years, and are of sound mind.

Dated New York, November 23, 1891.

*Robert E. Deyo* for appellant. The final writing was exe-cuted as prescribed by the laws of this state, for the execution of wills, and the first writing was incorporated therein. (2 R. S. 63, § 40 ; *In re O'Neill*, 91 N. Y. 516, 520 ; *In re Con-way*, 124 id. 455 ; *Sisters of Charity* v. *Kelly*, 67 id. 409 ; *Ludlum* v. *Otis*, 15 Hun, 414; *Van Wert* v. *Benedict*, 1 Bradf. 114; *Dyer* v. *Erving*, 2 Dem. 161; *Webb* v. *Day*, Id. 459 ; *Tonnelle* v. *Hall*, 4 N. Y. 140 ; *Van Cortland* v. *Kip*, 1 Hill, 590; *In re Washington Park*, 52 N. Y. 131, 134 ; *Thompson* v. *Quimby*, 2 Bradf. 449 ; *In re Nisbit*, 5 Dem. 286 ; *Ford* v. *Ford*, 70 Wis. 19 ; *Newton* v. *S. F. Soc.*, 130 Mass. 91 ; 1 Jarman on Wills, 78 ; 1 Redf. on Wills [3d ed.], 261 ; *Ela* v. *Edwards*, 16 Gray, 91 ; *Marsh* v. *Marsh*, 1 S. & T. 528 ; *Jones* v. *Habersham*, 63 Ga. 146 ; *Ginder* v. *Farnum*, 10 Penn. St. 98 ; *Bond* v. *Seawell*, 3 Burr, 1773 ; *Peck* v. *Carey*, 27 N. Y. 9.) If all the writings were not published so as to constitute a will when taken together, there were other declarations which published the final writings as a codicil, by which the first writing was republished. (*Brown* v. *Clark*, 77 N. Y. 369 ; *Hitchens* v. *Wood*, 2 Moore's P. C. 355 ; *Allen* v. *Maddock*, 11 id. 427.) The final writing is a part of the will. (Beach on Wills, § 24.) The subscription of the first writing by Mrs. Lehritter was not an attempt to execute her will. (*Barber* v. *Barber*, 17 Hun, 72.) The final writing could be in part a will and in part the certificate of the notary and the witnesses, and at the end thereof it could be executed as a will by the testatrix,

and also executed in attestation and certification by the witnesses and the royal notary. (*Younger* v. *Duffie*, 94 N. Y. 535; *Cross* v. *Cross*, L. R. [8 Q. B.] 714.) The method of execution meets the purpose of the statute. (*Lane* v. *Lane*, 95 N. Y. 494; *Seguine* v. *Seguine*, 2 Barb. 385.) The will devises the real estate in question to the appellant. (*Caulfield* v. *Sullivan*, 85 N. Y. 153.)

*Richard M. Bruno* for respondents. In determining whether a will was executed in conformity with the statute (2 R. S. 63, § 40), courts will not consider the intention of the testator, but that of the legislature. (*In re Conway*, 124 N. Y. 455; *In re O'Neill*, 91 id. 516.) What was done was not sufficient in law to fulfill the legislative requirements. (2 R. S. 63, § 40; *Lewis* v. *Lewis*, 11 N. Y. 220.) Detached papers not forming a connected series, all of a testamentary character, cannot be called a will. (*Younger* v. *Duffie*, 94 N. Y. 535.) Counsel for Charles Lehritter claims that the notarial instrument is to be taken as the end of the will, or as a part of a series of papers all making a will, but there is absolutely nothing to show that that instrument signed by Mrs. Lehritter was a will or a part of one. On the contrary, what is recited in the notarial instrument only goes to show that that paper was not the will or a part of it, but that the will, in her estimation and in the estimation of everybody, was another paper which was sealed up within the envelope. (*Lewis* v. *Lewis*, 11 N. Y. 220; *Chaffee* v. *B. M. Soc.*, 10 Paige, 85; *Lewis* v. *Lewis*, 11 N. Y. 221; *Remsen* v. *Brinckerhoff*, 26 Wend. 325; *Rutherford* v. *Rutherford*, 1 Den. 33.) The statute is not to be loosely construed. Exceptions are not to be made. (*In re Booth*, 127 N. Y. 109.) There is no presumption in favor of the appellant. The sole question is as to the execution of the will pursuant to the legislative intent as expressed in the statute. (*Hart* v. *Thompson*, 15 La. 88.) The declaration of the decedent was not in compliance with either the letter or the spirit of the statute. She declared the paper inside the envelope to be her last will, and, in the same breath,

declared it to be something else. The declaration must be unequivocal. (*In re Rutherford*, 1 Den. 33; *Burritt* v. *Silliman*, 16 Barb. 198; *Chaffee* v. *B. M. Soc.*, 10 Paige, 85; *Ex parte Beers*, 2 Bradf. 163; *Kingsley* v. *Blanchard*, 66 Barb. 317; *In re Larabee*, 1 Dem. 496.)

PECKHAM, J.   We are entirely satisfied with the opinion of the referee in this case, and think it unnecessary to ourselves add anything further than to notice very briefly one or two criticisms that were made upon it by counsel for the appellant in the course of the argument here.   It is said the vital point in the case is whether the final writing (contained in the foregoing ninth subdivision of the statement of facts) was executed as a will or codicil, and this point the counsel for the appellant says was wholly ignored by the referee.

On the contrary, we think he not only did not ignore it, but that he decided it in a way which was opposed to the claim that the final writing ever was executed either as a will or codicil.   He distinctly said that the final writing certifies to the formalities which attended the identification of the will which was in the envelope, after its execution and its deposit in a public office, and to nothing more.   And we are of opinion that in this respect the learned referee was clearly right.   There is no occasion to here specify and minutely examine how the final writing was executed, for it is plainly stated, as is also the purpose thereof, in the writing itself.

There is nothing in that paper that shows that it was executed as a will or as a codicil, or that it was in fact any part or parcel of the paper wrapped in the envelope and declared by the testatrix to be her will.   I think the evidence here shows beyond all controversy that the testatrix supposed she had executed her will and that it was wrapped up in an envelope, and that everything done subsequently was done in the course of an attempt to formally and, so to speak, officially identify such paper and to deposit it in the hands of the public notary, as the will of the testatrix.   I am unable to see how any other construction can be placed upon the plain

language of the ninth subdivision of the statement alluded to. The counsel for the appellant admits that if this final writing were not executed as a will or codicil, then Mrs. Lehritter died intestate and the judgment must be affirmed.

Even though the statute does not prescribe what shall be the terms in which a publication of a will shall be made or what shall be the terms of a request made to the witnesses to become such, yet there must be an acknowledgment or publication and there must be a request, and where the only evidence of either is contained in written papers submitted to the court, if those papers do not show a publication or request, the evidence is insufficient to prove the alleged will.

Regarding the paper in the envelope as a separate document, confessedly there is not a particle of evidence of a proper subscription before witnesses. On the contrary, the evidence shows a non-compliance with the requisites of the statute in such case.

Viewing the papers outside the document in the envelope, and it is plain they cannot be regarded as a will or as a part thereof, because they conclusively appear to be something else.

It may be assumed that the testatrix appeared before the notary for the purpose of making her will and depositing it with him. The written evidence submitted to the court shows without contradiction that she signed a paper as her will and deposited it in the envelope, and everything done thereafter by her or the notary, so far as the writing shows, was done for the purpose of identification alone.

It is said that an unattested instrument of the character of a testamentary disposition may be so identified by a subsequent will or codicil as to be regarded as incorporated with and forming a part of the will or codicil. (*Brown* v. *Clark*, 77 N. Y. 369, 378.) Hence, the claim that the paper in the envelope is thus incorporated with and does form a part of the final writing, and all the papers are to be construed as forming the will of the testatrix. The claim might be well founded if the final writing had been executed as a will. In the case of *Brown* v. *Clark* (*supra*), the testatrix, while an

unmarried woman, had duly made her will. She subsequently married and thereby revoked it. After that time she duly executed a codicil to such will, in which she referred to it, and in the body of the codicil she declared her intention to thereby re-publish, re-affirm and adopt the will, as modified by the codicil, as her present will, in the same manner as if then executed by her, and then followed this clause : " Which codicil, in connection with and amendment of my will, I now publish and declare together as constituting my last will and testament." The codicil was duly executed with all the requirements of the law. This court held that the execution of the codicil was a re-publication of the will, and it and the codicil were to be considered together as the will of the testatrix. The evidence in that case left no room for doubt (the court said) that the main purpose of the testatrix in making the codicil was to re-establish the will, which had been revoked by her marriage.

No such fact appears here, and on the contrary it does appear that there was an absence of any testamentary intent as to the final paper when the signatures were placed upon it.

It may be here admitted, as claimed by appellant's counsel, that an invalid subscription is equivalent to no subscription, and the paper in the envelope described as a will may, therefore, be regarded as unsigned, and still we cannot see that the final writing can ever become a part of the will, or that the signature of Mrs. Lehritter to the final writing can ever be regarded as her signature at the end of her will. Nor can we find any evidence of· a request on her part to any witness to become such. It is perfectly evident, from its contents, that the final writing is not, and was not intended to be, any part of her will or codicil, and her signature was not placed at the end of the writing for the purpose or with the intent of thereby subscribing such an instrument. In the final writing the testatrix declares orally that she has just handed the notary her last will, and if it should not be legal she wishes to have it carried into effect as a codicil, gift *causa mortis* or in any legal way possible. This does not make the final writing a

will or codicil. It is but one of the formalities observed by the parties in the course of identifying the document contained in the envelope as the will of the testatrix, and to call the final writing itself a codicil and a re-publication of the will would be to make of the means for identifying another paper that very paper itself.

In any view that we can take of the subject, we think the order of the General Term was right, and that it should be affirmed, with costs.

All concur.

Order affirmed.