In the Matter of Proving the Last Will and Testament of JOHN H. COGAN, Deceased.

ELLEN COGAN MEANOR and Others, Contestants, Appellants; MARY CULLEN, Proponent, Respondent.

First Department, July 11, 1918.

**Will — probate — insufficient proof of execution.**

Where upon the presentation for probate of an instrument consisting of two detached sheets of paper written by the testator and subscribed by him but naming no executor and containing no attestation clause, it appeared that no witness signed either of the sheets of paper; that more than one year and five months thereafter a certificate, stating in effect that the testator in sound mind identified his cousin as the one to whom he had bequeathed his estate as specified in the aforesaid instrument, was signed by a doctor and a nurse at the hospital where the decedent was then a patient, and there is no substantial evidence that the decedent intended to execute a will on the occasion when the certificate was made nor that he asked the witnesses to the certificate to witness

---

* Laws of 1846, chap. 274, § 3.— [REP.

the execution of the papers as his will or that he in any manner indicated to them that he desired them to act as such witnesses and the nurse who witnessed the certificate had not seen the decedent's signature, the instrument should not be admitted to probate.

SHEARN, J., dissented, with opinion.

APPEAL by Ellen Cogan Meanor and others, contestants, from a decree of the Surrogate's Court of the county of Bronx, entered in the office of said Surrogate's Court on the 23d day of January, 1918, admitting to probate a paper purporting to be the last will and testament of John H. Cogan, deceased.

*Robert A. B. Dayton*, for the appellants.

*Leo J. Hickey* of counsel [*Peter A. McCabe* with him on the brief; *McCabe & Hickey*, attorneys], for the respondent.

LAUGHLIN, J.:

The alleged will is in the handwriting of the decedent and is written on two detached sheets of paper and bears date November 1, 1915. It is in the form of a certificate " To Whom it May Concern," and the decedent therein certified that he gave and bequeathed to his cousin Mary Cullen all his money in certain specified banks, all his jewelry and all household goods that she may wish to keep, the rest to go to the Salvation Army; and then that she was to pay from the gifts and bequests to her all his funeral " And Other Expenses," and to see that he was buried as therein directed, and to cause certain inscriptions to be placed on his headstone. He also certified to whom his wearing apparel was to go, and at the end he certified that it was his last and only will and that it was his wish that it be not changed. He subscribed his name thereto but named no executor. It contained no attestation clause, and no witness at any time signed either of the two sheets of paper. Concededly no one witnessed the execution of the paper by the decedent at the time it bears date. The only written evidence with respect to the execution of the will is a certificate on a third, smaller, detached sheet of paper, dated more than one year and five months thereafter at Fordham Hospital, April 9, 1917, where the decedent then was a patient having been operated on for appendicitis, as follows:

" To whom it may concern,

" This is to certify that Mr. John H. Cogan, in sound mind, identified his cousin Mary Cullin as the one to whom he bequeathed his estate as specified in his last will dated Nov. 1st, 1915.

" Witnesses

" PHILIP R. ZINN, M. D.,<br>" HELEN HANNIGAN."

No point is made with respect to competency or undue influence.  The appellants only attack the execution of the paper as a last will and testament.  The only evidence with respect to the custody of the paper from the time the decedent subscribed it until the day the certificate of the witnesses quoted was executed is the testimony of Dr. Zinn, one of the certifying witnesses, who was then an interne at the hospital. He testified that he was called downstairs to meet Miss Cullen who had this paper " which was supposed to be his last will; " that she stated that her cousin, Mr. Cogan, was seriously ill upstairs and asked him " to get confirmative evidence from him that this was his last will; " that he read the papers and then went upstairs with her and questioned the decedent about their contents and had him identify Miss Cullen; that the decedent said that she was his cousin and he wanted everything left to her as stated " in these papers; " that he read the entire will or abstracts therefrom to the decedent and mentioned the date and asked him to identify " the paper and the signature; " that then he wrote " a little statement, this paper here, [meaning the certificate] which is something of what transpired at the bedside, and giving Miss Cullen something tangible so that she could use in case she needed it; " that he and the nurse then signed the third sheet containing the certificate so written by him, and read it to the decedent and told him he was going to give it to Miss Cullen " so that she could use it as she saw fit," and that decedent approved either by nodding assent or expressing his approval in words; that he then delivered the three sheets together or separately to Miss Cullen; that the three sheets were folded together, but not fastened, and put in an envelope either by him or by her, and that the two sheets

in the handwriting of the decedent were folded twice, the first sheet containing the date and commencement of the certificate, and the second ending with the signature of the decedent, and the third was on note paper about half the size of the other sheets and was folded on the outside of the others only once, covering one of the two folds. In answer to an inquiry by the surrogate with respect to whether anything was said as to what the paper was, the witness said not until after they signed, but that the decedent in answer to a leading question by him said that it was his will. There was no evidence that decedent summoned Dr. Zinn or the nurse to his bedside, or that he expressed any desire to make a will or supposed that he was executing a will at that time. The testimony does not overcome the certificate with respect to the purpose and substance of that interview between the decedent and the witnesses. Miss Hannigan, the other witness, who was a nurse in the hospital, testified that she was sitting at her desk near the bedside of the decedent and that Dr. Zinn came up to the bedside of the decedent " after Miss Cullen had been talking to him;" that they talked to the decedent and then Dr. Zinn came to her and asked if she would not go over and talk with Mr. Cogan, saying that Cogan had his will there and he — the doctor — wanted to know if she would not witness it; that she accompanied the doctor to the bedside and the doctor asked Mr. Cogan " if it was his will," to which Mr. Cogan replied " Yes;" that thereupon Dr. Zinn went to her desk and wrote the certificate, saying " that it was Mr. Cogan's wish that everything should be left to Miss Cullen and that that was his will and testament," — which of course is not what he wrote — and that she signed the certificate in Dr. Zinn's presence; that she had no recollection that anything was said or any question was asked about a signature and thought nothing was said on that subject, but later on she testified in answer to a leading question that Dr. Zinn asked the decedent " if it was his signature," and that he said that it was; that Dr. Zinn gave the three sheets of paper to Miss Cullen; that the will was unfolded at the time Dr. Zinn first talked with the decedent before talking with her and she was sitting only a couple of feet away, but at the time Dr. Zinn was talking to the decedent,

after calling her over, the will was folded or partly folded and she did not see the inside of it or the signature of the decedent so far as she remembered, but that she did remember that the decedent answered in the affirmative a question by Dr. Zinn as to whether that was his signature, and that the two sheets in the handwriting of the decedent offered in evidence looked like the papers, but she could not say they were those she saw on that occasion. The only other evidence relates to the handwriting of the decedent.

I am of opinion that the learned surrogate erred in admitting these papers to probate as the last will and testament of the decedent. (See 101 Misc. Rep. 652.) The theory on which the learned surrogate made the decree is that the will was duly executed at the time the certificate was made at the hospital. The certificate written by Dr. Zinn at the time shows the purpose for which it was made, and if the testimony of the witnesses who executed that certificate impeached it, their written certificate made at the time should be deemed controlling, for they then had no motive to make a certificate other than according to the facts. I have stated the substance of their testimony, and I think it cannot be said to impeach the certificate. It is perfectly plain that the certificate indicates that the witnesses did not understand that the decedent was executing his will on that occasion, and, if the certificate be true, it is equally clear that he supposed that he had executed his will by writing it long before or at any rate did not understand that he was then making a will. There is no substantial evidence that the decedent intended to execute a will on the occasion when this certificate was made. There is no evidence that he asked the witnesses who executed this certificate to witness the execution of these papers as his last will and testament, or that he in any manner indicated to them by word, sign, or otherwise, that he desired them to act as such witnesses, and with respect to the witness Hannigan there was an insufficient publication of the paper as a last will and testament, for she did not see the signature, and both of these requirements were essential within controlling authorities; and, moreover, the evidence does not show the execution of a single paper as the last will and testament, but shows the

execution of two separate papers for different purposes, the one supposed to have been a complete will, and the other a mere certificate for the purposes therein stated. (Decedent Estate Law [Consol. Laws, chap. 13; Laws of 1909, chap. 18], § 21; *Matter of Raymond,* 86 Misc. Rep. 359; *Gilbert* v. *Knox,* 52 N. Y. 125; *Kingsley* v. *Blanchard,* 66 Barb. 317; *Matter of Keeffe,* 155 App. Div. 575; affd., 209 N. Y. 535; *Mitchell* v. *Mitchell,* 16 Hun, 97; affd., 77 N. Y. 596; *Matter of Laudy,* 148 id. 403; *Matter of Mackay,* 110 id. 611; *Vogel* v. *Lehritter,* 64 Hun, 308; affd., 139 N. Y. 223.)

It follows that the decree should be reversed, with costs to appellants; that the findings and conclusions of law inconsistent with these views should be reversed and those reversed specified in the order, and findings and conclusions of law in accordance with these views denying the application for the probate of the papers, with costs, should be made and directing the entry of a decree accordingly.

CLARKE, P. J., SMITH and PAGE, JJ., concurred; SHEARN, J., dissented.

SHEARN, J. (dissenting):

This will, which the surrogate after mature deliberation admitted to probate, was entirely in the handwriting of the testator. It was properly signed at the end by the testator; he declared it to be his will in the presence of two disinterested witnesses; he acknowledged his signature to one witness in the presence of the other; both witnesses signed as such in the immediate presence of the testator and in the presence of each other. The only formality lacking in the proof is that the testator requested the witnesses to sign. There is no suggestion of fraud or undue influence. Under such circumstances, a careful and experienced surrogate being satisfied that the document was in fact the testator's will, I do not think that we are compelled to hold that a statute enacted to prevent fraud, and substantially complied with, shall be applied so literally as to destroy the will and frustrate the testator's clear intention.

" The atmosphere of a testamentary instrument, wholly in the handwriting of the testator, is such as, naturally, to dispose the judicial mind to accept it as his will with less

First Department, July, 1918.                    [Vol. 184.

strictness in the proof of a compliance with statutory formalities. In all cases, a substantial compliance will be sufficient and no particular form of words is required, or is necessary, to effect publication." (*Matter of Turell,* 166 N. Y. 330, 337.) If this is the rule with respect to the all-important matter of publication, there is much stronger reason for applying it to such a purely formal matter as requesting witnesses to sign, especially in a case where the document was, concededly, declared by the testator to be his will and at the same time he acknowledged his signature and saw the witnesses sign. The Court of Appeals has so declared. " The manner and form in which the request must be made, and the evidence by which it must be proved, are not prescribed." (*Coffin* v. *Coffin,* 23 N. Y. 9, 16.) As the evidence shows that the testator was of sound mind and understood what was being done, it may readily be inferred in this case that it was his wish that the witnesses should sign as such, and when they did sign under his very eyes, and only two or three feet away from him, his acquiescence, together with all the surrounding circumstances, was tantamount to a request.

The decree should be affirmed.

Decree reversed, with costs, and application for probate denied, with costs. Order to be settled on notice.