In the Matter of Proving the Last Will and Testament of
CARL RAPP, Deceased, as a Will of Real and Personal
Property.

MINNIE MERKLE, Appellant; MARGARET F. REILLY,
Respondent.

Second Department, November 26, 1920.

**Wills — probate — when due execution not shown — attestation
clause.**

The due execution of a will is not shown on an offer of probate, made within
four months after execution, where it appears that the testator was a
German unable to read the English language; that he was sick in a hospital
at the time of execution; that the will was in English and was brought to
the hospital by the proponent who also secured the witnesses, and the
subscribing witnesses agree that after the will was signed the testator
never requested them to sign nor did he publish or announce that the
document was his will.

Where the subscribing witnesses give meagre evidence, and even negative
proof as to the formalities of execution, probate cannot be had by resort to
the recitals of the attestation clause.

APPEAL by the contestant, Minnie Merkle, from a decree of
the Surrogate's Court of the county of Richmond, entered in
the office of the clerk of said court on the 28th day of January,
1920, which admitted to probate a paper dated March 4,
1919, propounded as the will of Carl Rapp, who died in the
Staten Island Hospital on March 6, 1919.

*William E. Stewart*, for the appellant.

*John McCormick* [*Charles T. Rudershausen* of counsel], for
the respondent.

PUTNAM, J.:

The deceased had been a German saloonkeeper. It can be
deduced from the testimony that although he had been in this
country forty-three years, he did not understand English and
could not read an English newspaper.

Two daughters, Mrs. Margaret F. Reilly, the proponent,
and Mrs. Minnie Merkle, the contestant, were the only

children. An estrangement between them began about the time of the mother's death in 1915.

About 1917, Rapp, who had lived with Mrs. Reilly, came back to work as a janitor in a German boarding house in Staten Island.

On Sunday evening, March second, Rapp was stricken with pneumonia, and was removed in an ambulance to the Staten Island Hospital at Castleton. His temperature was 104.4 degrees. He communicated with the hospital physician through an interpreter. Mrs. Reilly, the proponent, who had been notified, came to the hospital on Tuesday, March fourth. She brought with her a will which her husband had prepared about a month before. Proponent on the stand volunteered the statement that she read the will to her father. Counsel moved to have this stricken out, which motion was denied. The house physician and the nurse were asked to witness this will, but declined. Mrs. Reilly then went to the boarding house where Rapp had lived, and obtained three men, Stucken, Schultz and Fonday, whom she asked to witness the will. When they came to the bedside between eight and nine P. M. Stucken says that Rapp read the paper with his glasses, and then said: "All right. What can I do? * * * Go ahead." All talk was in German. That he then raised up in bed and put out one leg and wrote his name on the paper upon a side table. Then Stucken signed and Schultz followed, who testified that Rapp remarked, " I give the property to Mrs. Reilly." Both witnesses agree that after Rapp signed the paper he never requested the witnesses to sign, and made no publication or announcement that the document was his will. It may be doubted whether decedent knew or comprehended its contents, in the English language.

Where the subscribing witnesses give such meagre evidence, and even negative proof as to formalities, probate cannot be had by resort to the recitals of the attestation clause. Here is not a long lapse of time, with the likelihood of forgetfulness. The trial followed in less than four months. In *Matter of Hermann* (87 Misc. Rep. 476) Surrogate FOWLER points out that a *rogatio testium* is an essential part of the execution. In 1854 it was held that due execution of the formalities of the will cannot be presumed from the attestation clause, if

the testimony proves the contrary.  (*Lewis* v. *Lewis*, 11 N. Y. 220.  See *Matter of Turell*, 166 N. Y. 330, 338; *Matter of Cogan*, 184 App. Div. 202; affd., 226 N. Y. 694.)

These authorities, I think, require a reversal and a determination that there was not due proof of the execution of this paper as a will.  (See Decedent Estate Law, § 21.)

I advise, therefore, that the decree of the Surrogate's Court of Richmond county be reversed upon the law and on the facts, and that its findings of fact numbered IV, V, VI and VII be reversed; that the contestant's proposed findings numbered VI, VII, VIII, IX, X and XI be found and allowed, and that a decree refusing probate of the paper propounded be accordingly entered in said Surrogate's Court, with costs of this appeal and of the probate proceedings to the contestant, payable out of the estate.

Jenks, P. J., Rich, Blackmar and Kelly, JJ., concur.

Decree of the Surrogate's Court of Richmond county reversed upon the law and on the facts; its findings of fact numbered IV, V, VI and VII reversed; the contestant's proposed findings numbered VI, VII, VIII, IX, X and XI found and allowed, and a decree refusing probate of the paper propounded is accordingly directed to be entered in said court, with costs of this appeal and of the probate proceedings to the contestant, payable out of the estate.