In the matter of a paper-writing purporting to be the last will and testament of CHARLES SUTTERLIN, SR., deceased.

[Submitted October 30th, 1925.   Decided February 1, 1926.]

1. The statute of 1851 (*Rev. 1877 p. 1247; Comp. Stat. p. 5867 pl. 24*) requires that the signature of a will "shall be made by the testator, or the making thereof acknowledged by him, and such writing declared to be his last will, in presence of two witnesses present at the same time, who shall subscribe their names thereto, as witnesses, in the presence of the testator." *Held*, that these requirements are not satisfied by testator signing the will in the presence of one witness, who then signs as witness, and acknowledging the signature in the presence of both witnesses after the second has come into the presence of testator, and by the second witness then signing as such.   The signature of the first witness cannot relate forward to the acknowledgment made after it was affixed.

2. It is essential to the validity of a will that everything required to be done by the testator shall precede in point of time the subscription of the witnesses.

3. The attestation clause, with the signatures of the witnesses, is *prima facie* evidence of the facts stated in it.   It may be overcome by the witnesses themselves, or by other witnesses, or by facts and circumstances irreconcilable with its verity.   Following (in this respect), *Mundy* v. *Mundy, 15 N. J. Eq. 290*, as cited in *Bioren* v. *Nesler, 77 N. J. Eq. 562*.

4. Whether a statement by testator to a witness, "this is my will and I want you to sign it," amounts to an acknowledgment of his signature previously affixed to the will, *quære.*

---

On appeal from a decree of the prerogative court advised by Vice-Chancellor Leaming, whose opinion is reported in *98 N. J. Eq. 307.*

*Mr. Joseph H. Carr,* for the appellant-caveator.

*Mr. Grover C. Richman,* for the respondents.

The opinion of the court was delivered by

PARKER, J.

We concur in the finding of facts appearing in the opinion of the learned vice-ordinary, and shall not take time to repeat them at length. He properly found that testator signed the paper and declared it to be his will in the presence of one witness, and that that witness then signed as such in presence of deceased; that thereafter, and while deceased and the first witness were still together, the second witness came in, deceased exhibited the paper to him, said it was his will, and asked him to witness it, and he thereupon subscribed the attestation clause as witness, in presence of deceased and of the first witness.

Assuming for present purposes without deciding, as intimated in the court below, that a declaration by the deceased, "this is my will and I want you to witness it," imports an acknowledgment of his signature previously made, the situation was this: Deceased had signed the paper and declared it as his will in the presence of one witness, who then subscribed as such; he had declared the paper as his will (and on the above hypothesis), had acknowledged signature thereto in the presence of both witnesses, one of whom had previously signed, the other of whom then signed.

This was not a compliance with that clause of the Wills act of 1851 (*P. L. p. 218; Rev. 1877 p. 1247; Comp. Stat. p. 5867 pl. 24*), which requires that the "signature shall be made by the testator or the making thereof acknowledged by him, and such writing declared to be his last will, in the presence of two witnesses present at the same time, who shall subscribe their names thereto, as witnesses, in the presence of the testator." The statute requires one of two things: (a) That the two witnesses shall be present when the will is signed and published, and thereafter subscribe their names;

or (b) that the two witnesses shall be present when the signature is acknowledged and the will published, and thereafter subscribe their names.

Neither of these conditions obtained in the present case; one witness attested the actual signature, the other attested the acknowledgment of that signature.

In *Mundy* v. *Mundy, 15 N. J. Eq. 290,* Chancellor Williamson, sitting as ordinary, expressed the view on page 294, *obiter,* as afterwards held, that "the particular order of the several requisites to the valid execution of a testament is not at all material." This was followed by Chancellor Magie, as ordinary, in *Lacey* v. *Dobbs, 61 N. J. Eq. 575.* On appeal to this court, *63 N. J. Eq. 325,* the proposition enunciated by Chancellor Williamson was definitely overruled, and the specific rule laid down that "it is essential to validity that everything required to be done by the testator shall precede in point of time the subscription of the witnesses." This result was reached with due regard to the principle of *stare decisis* (at *p. 326*) and propounded in a most careful and learned opinion by Mr. Justice Collins, a leader of the bar before, and for many years after, his term of judicial service. It was followed and approved in *Bioren* v. *Nesler, 77 N. J. Eq. 560,* also in this court.

In neither of these cases were the facts precisely on all fours with those in the case at bar. In *Lacey* v. *Dobbs* the witnesses signed before the testator; in *Bioren* v. *Nesler* the signature of testator was neither made nor acknowledged in presence of the witnesses. But the rule in *Lacey* v. *Dobbs,* as stated by this court, has stood unchallenged as the law of this state, and a careful examination of the opinion of Mr. Justice Collins will demonstrate that it is founded on both reason and authority. Two cases arising under the English statute of 1837 (which was almost identical with our own, and is set out in the opinion) are so strikingly similar on the facts that it is worth while to reproduce here the portions of the opinion relating to them. The first is *Moore* v. *King, 3 Curt. 243,* a decision by Sir Herbert Jenner-Fust. We copy from the opinion in *Lacey* v. *Dobbs, supra:*

"These were the facts: The testator signed the draft of his will in the presence of his sister, who subscribed her name as a witness. On the next day he acknowledged his signature in her presence and in the presence of another person, to whom the sister pointed out her signature, and who then subscribed as a witness. The will was held invalid for lack of conformity to the statute. * * * The judge said: 'I clearly find that the object of this act is to remove every possible doubt, thereby taking away all latitude and discretion in its interpretation.' He declared his opinion that 'the act is not complied with unless both witnesses shall attest and subscribe *after* the testator's signature shall have been made or acknowledged to them when both are actually present at the same time.' He pointed out that the alternative of acknowledgment of the testator's signature, expressly given by the act, precludes any implication that the witnesses might acknowledge their signatures previously made."

The other case is *Hindmarsh* v. *Charlton, 8 H. L. C. 160*, affirming Sir Cresswell Cresswell, in the court of probate and divorce. Further extracting from *Lacey* v. *Dobbs, supra:*

"Briefly stated, the case was this: Hindmarsh produced to Dr. Wilson, a surgeon attending him in illness, a paper-writing, which he then signed and said was his will, and asked the surgeon to subscribe as a witness. Dr. Wilson wrote, 'witness to the above will and testament, and signature,' and signed his name, inadvertently omitting to cross a capital F, so that it stood as a T. Later in the day Dr. White, the physician in regular attendance, called, and there was a medical consultation. Dr. Wilson had previously told Hindmarsh that there ought to be another witness to the will, and after the consultation both doctors went into the sick room, taking it with them. Hindmarsh then acknowledged his signature and Dr. White subscribed his name as a witness. Dr. Wilson, noticing that the F in his name lacked a cross, supplied one, and, at Dr. White's suggestion, added the date. It was held that in order to comply with the statute, 'the signature or acknowledgment of the testator must be made in the presence of two witnesses, present at the time,

and they must, *after* he has so signed, or so acknowledged, his signature, subscribe the will in his presence,' and that a correction of an error in the previous writing of the name of a witness, *or his acknowledgment of his signature,* or the adding of a date will not be sufficient." (Italics ours.)

Applying the rule in *Lacey* v. *Dobbs,* based on the eminent authorities above cited and others abstracted and cited in that case, it follows that in order that the will be valid in point of execution and attestation it is necessary that the testator either sign in the presence of two witnesses present at the same time, and that they both thereafter subscribe as witnesses in the presence of the testator; or that the testator, having previously signed the will, acknowledge his signature in the presence of two witnesses present at the same time, and that they both thereafter subscribe as witnesses. In both cases, of course, the paper must be declared as a will.

These conditions were not met in this case. One witness was present at the actual signature and signed as witness. This by itself was, of course, nugatory. He was also present with the other witness at an acknowledgment of the signature, but did not thereafter sign. This is not enough. Under the rule laid down in the cases, the prior signature of the first witness cannot relate forward to an act occurring after it was affixed.

We said at the outset that the vice-ordinary had correctly found the facts. On this point the briefed argument for respondent requires some notice. Stress is laid, and properly so, on the existence of an attestation clause, perfect on on its face, and certifying to facts which, if correctly certified, demonstrate a legal execution and publication of the will. The case is simply one of flat contradiction of the clause by the testimony of both witnesses. The vice-ordinary evidently considered that the probative force of the attestation clause had been overcome. In the earlier decisions, the rule laid down was that the attestation clause was *prima facie* proof of the truth of the statements contained therein. *Remsen* v. *Brinckerhoff, 26 Wend. 325; Mundy* v. *Mundy, supra; Tappen* v. *Davidson, 27 N. J. Eq. 459; Allaire* v. *Allaire, 37*

*N. J. Law 312; 39 N. J. Law 113; Mandeville v. Parker, 31 N. J. Eq. 242, 248; Turnure v. Turnure, 35 N. J. Eq. 437, 440; McCurdy v. Neall, 42 N. J. Eq. 333; Elkinton v. Brick, 44 N. J. Eq. 154, 166; Farley v. Farley, 50 N. J. Eq. 434, 439; Darnell v. Buzby, 50 N. J. Eq. 725.* Later, in the prerogative court, the rule was strengthened to the extent of saying that the presumption arising from the clause was impregnable unless overcome by strong and convincing evidence. *Berdan's Case, 65 N. J. Eq. 681; Bloom v. Terwilliger, 78 N. J. Eq. 221; Seymour's Will, 114 Atl. Rep. 799;* though such presumption may be overcome by testimony, even by that of the subscribing witnesses. *Berdan's Case, ubi supra; Manners' Case, 72 N. J. Eq. 854.* In *Gahagan's Case, 82 N. J. Eq. 601,* no more than an ordinary presumption was intimated. So far as shown by the researches of counsel, the rule has not been so strongly stated in this court, though in *Veazey's Case, 80 N. J. Eq. 466,* we adopted an opinion of Judge Joline in the orphans court, quoting *McCurdy v. Neall, supra.* But in *Bioren v. Nesler, supra,* we definitely adopted the rule as laid down in *Mundy v. Mundy, 15 N. J. Eq. 290* (at *pp. 562, 563*).

Whether the stronger or weaker presumption applies is of little moment in the present case. Both subscribing witnesses testified, fifteen months after the will was signed, consistently and positively, to the state of facts as found by the vice-ordinary and abstracted at the outset of this opinion. Any presumption arising from the attestation clause was therefore fully overcome.

These considerations lead to a reversal of the decree of the prerogative court, with directions that probate of the paper propounded be denied.

*For affirmance*—MINTURN, KALISCH, BLACK, JJ.   3.

*For reversal*—THE CHIEF JUSTICE, TRENCHARD, PARKER, KATZENBACH, CAMPBELL, LLOYD, GARDNER, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, JJ.   11.