9 N.J. Super. 576 (1950)
75 A.2d 833
IN THE MATTER OF THE ESTATE OF FELIX DI PERSIA, DECEASED.
Superior Court of New Jersey, Hudson County Court Probate Division.
Decided September 28, 1950.
*577 Messrs. Carl and William Abruzzese, attorneys for plaintiff (Mr. Ralph G. Mesce, of counsel).
Mr. Frederick J. Gassert, attorney for Rev. Joseph DeSanctis and Very Rev. Msgr. John G. Delaney, executors, defendants (Mr. Frederick J. Gassert, Jr., of counsel).
DREWEN, J.C.C.
Decedent was a citizen of the United States, domiciled in Jersey City, where he died November 24, 1940. He left a will (herein called the New Jersey will), dated May 5, 1937, which was admitted to probate by the Surrogate of Hudson County on December 6, 1940. At the time of his death he was the owner of property, real and personal, part of it situate in New Jersey and part in Italy. For reasons of no present concern the Italian assets did not come into the executors' hands. As of record in this court, the estate has been entirely administered and distributed.
The plaintiff, Angela DiPersia Ciruzzi, a sister of decedent, now offers for probate, pursuant to R.S. 3:2-46 what purports to be a duly authenticated copy of a subsequent will made and executed by decedent on April 22, 1938, at Stigliano, Italy, and herein called the Italian will. The latter document, now alleged to be decedent's last will and testament, has already been admitted to probate at Stigliano in accordance with Italian law. Plaintiff contends that the Italian will annuls the New Jersey will, and demands judgment against defendants, who are the New Jersey executors, (a) admitting the Italian will to probate, per photostatic copy *578 in accordance with the statute, supra; (b) vacating the letters testamentary issued to defendants by the Surrogate of Hudson County; and (c) directing that letters of administration with the will annexed be granted to the Italian Vice-Consul at New York or to some other fit and proper person. The cause is submitted for the court's decision on stipulated facts.
Included in the stipulation are two separate transcripts of the minutes of proceedings had in Italy respecting the Italian will and each embodying a transcript of the will itself. I mention these in the chronological order of their reference, though they appear in the reverse order in the stipulation. One of the transcripts, which I shall call the delivery minutes (designated Schedule "P" in the stipulation), relates in part to a phase of Italian testamentary procedure wherein a sealed will is deposited by the testator with a designated public functionary titled a notary, for its custody and preservation by the notary against the event of testator's death and the taking effect of the will. The minutes describing this procedure appear in the transcript as Exhibit "B." Exhibit "C" therein is a copy of the Italian will.
The other transcript (Schedule "B" in the Stipulation), which I shall call the publication minutes, relates to a phase of Italian testamentary procedure wherein, after testator's death, the notary's custody of the will is formally terminated at the instance of one called the "requesting party" and the will is examined and published. To every practical intent this procedure is equivalent to what is known in our own practice as probate. For further clarity it should be stated that the delivery transcript includes the minutes of publication as well, while the other contains the minutes of publication only. I make separate mention of these two items of the stipulation because of their separate places in the factual narrative, as will presently appear.
On February 17, 1941, one of the defendant executors, during the progress of the New Jersey administration, received from a kinsman of decedent in Italy a letter advising of the existence of the Italian will. It appears that thereupon counsel *579 to the executors promptly sought and obtained a duly authenticated copy of the Italian will. The form in which this came to him is the transcript of the publication minutes (Schedule "B" in the Stipulation). From the copy of the Italian will embodied therein the will was ascertained to be devoid of evidence of its attestation. That state of things, I observe in passing, and notwithstanding the further documents and proofs, is one that I judge to have since remained unaltered; and it bears on what I deem to be the one controlling issue here.
Since decedent at the time of his death was neither resident in nor a citizen of Italy, the executors were advised by counsel that the Italian will, for the reason indicated, was not provable in New Jersey. Accordingly the executors proceeded with their administration. The Italian interests at that time were represented by counsel now acting for plaintiff, and who, it appears from the stipulation, did not dissent from the refusal of the executors to recognize the Italian will, for by letter of September 20, 1941, they advised their principal that the Italian will would be "entirely disregarded by the executors in this country because it was not executed in accordance with the laws of the State of New Jersey."
That, for the time being, seems to have ended the matter of the foreign document. Its revival came in the bringing of the present suit, instituted in July, 1949, following the receipt by plaintiff's counsel of the other transcript (delivery minutes, Schedule "P" in the Stipulation) in November, 1948. It is upon these delivery minutes that plaintiff's contention that the Italian will is validly attested entirely rests. They are all that could possibly be relied on in any case since everything else in the transcripts is post mortem. (We shall see how this limitation is overlooked by plaintiff's counsel.) Concerning attestation I find, as I have already indicated, nothing in the delivery minutes that in the least supplies the deficiencies shown by the minutes of publication, upon which the executors were counselled in 1941.
During the interval of the late war the Italian parties, through the Swiss consular offices here, made inquiry and *580 were informed from time to time respecting the status and progress of the administration in New Jersey and with respect also to certain relevant portions of the New Jersey law. During the same interval the executors obtained on April 9, 1943, a decree allowing their final account and on July 7, 1943, a decree of distribution.
The manner and extent of attestation prescribed by R.S. 3:2-3 is that the attesting witnesses "shall subscribe their names thereto (i.e., to the will) as witnesses." Every detail of compliance with the statute is essential. Nothing may be dispensed with. Our courts have uniformly so held. In the case of In re Amsden's Will, 121 N.J. Eq. 571 (E. & A. 1937), the Court of Errors and Appeals recounts the statutory requisites and sets forth as the fifth and last "that the two witnesses shall subscribe their names thereto in the presence of the testator." The court adds, "Each and every one of these requisites must exist. They are not in the alternative." And it is specifically asserted in Matter of the Estate of Abbott, 1 N.J. Super. 298 (1949), "One of the requisites of the making of a valid will is that publication shall be made `in the presence of two witnesses present at the same time, who shall subscribe their names thereto as witnesses in the presence of the testator.'" See also Bioren v. Nealer, 77 N.J. Eq. 560 (E. & A. 1910); In re Will of Sutterlin, Sr., 98 N.J. Eq. 307 (Prerog. 1925); reversed on other grounds, 99 N.J. Eq. 363 (E. & A. 1925). The statute pursuant to which transcript of the foreign will is in the present instance offered for probate (R.S. 3:2-46) contains the following: "Nothing in this section contained shall be construed to permit the admission to probate of any will not executed in the manner and form required by the laws of this state."
Extensive briefs have been supplied and many cases cited. To plaintiff's argument that the minutes of delivery supply whatever deficiencies had been previously discerned, defendants' brief does not respond. Strangely enough, defendants do not deal with this aspect of the argument at all but are preoccupied rather with the proposition that plaintiff is guilty of laches, and that she is equitably estopped from *581 claiming any right to the probate of the Italian will in New Jersey. After careful consideration of the whole argument submitted and examination of the facts and exhibits, I have reached the stated conclusion that validity of attestation is the determining issue. Everything else, as I see it, is academic. The doctrine of laches and of estoppel I judge to have no application; and admitting, only for the clarifying of the court's position, that in certain circumstances in a dispute of this general nature the doctrines mentioned might conceivably be made effective under the authorities cited or some of them, I find nothing in the stipulated proofs to afford a basis for their application here.
The omission of argument by defendants on what I deem to be the crucial question cannot impede the court's disposition of the case on that precise point. Failure of the court to make such disposition would be to accommodate a flagrant violation of the statute, a result which, certainly in a plain case like this, it becomes the court's prime duty to prevent.
Now, what is the utmost that the delivery minutes show? (And here we must bear in mind that these minutes are separate and distinct from the publication minutes appearing in the same transcript.) They show that on April 26, 1938, testator presented himself to the notary at Stigliano and delivered to him a "packet" as in the minutes described, "already closed and sealed." The seals were five in number and consisted of red sealing wax, each bearing the royal coat of arms and being "so affixed that the packet cannot be opened nor its contents extracted without breaking or altering them." Testator at the same time declared to the notary that "within said packet is contained his will, written, dated and transcribed in his own handwriting." The notary accepted delivery of the packet "to keep it in the files of wills and last testaments." All of this was done in the immediate and continuing presence of testator, the notary and four other persons acting as witnesses. Thereupon the notary proceeded to draw in his own handwriting "these minutes of delivery," still in the continuing presence of the persons stated, which minutes were then read "with loud, clear voice and in the *582 presence of the witnesses to the testator, who, having been interrogated fully, approved them (i.e.  the minutes) inasmuch as they complied with the truth and with his wishes." The testator, the notary and the witnesses then subscribed the minutes.
From nothing in the foregoing does it appear that there were witnesses to the will who "subscribed their names thereto." What the witnesses signed and the only thing they are said to have signed is the minutes. It was never intended that they should sign anything else. Certainly not the will, for the will was secret, and enclosed with elaborate certainty against any direct knowledge on the part of the persons called witnesses that the will existed. What was witnessed in the minutes is the depositor's statement that the will did exist and that it was contained in the sealed packet. In the Italian proceedings of delivery it was never contemplated that the witnesses should perform that office whose function our statute is designed to ensure, and if it is ever to be declared that they did perform that office it will have to be upon some theory by which the result is said to have emerged per accidens, a theory like that presently advanced. In the Italian proceedings, moreover, the making and execution of the will were not the essential thing so far as any function of witnesses is concerned, for we can only suppose that had there not been the proceedings of delivery there would have been no witnesses at all. For all purposes relevant to this case that must be so. There is nothing before the court to show the requirements of Italian will-making apart from the procedure with which we are dealing. To look for the names of subscribing witnesses, not upon the will but elsewhere, as in the present case upon the minutes, is plainly to presume a lack of discipline repugnant to anything within the tolerance of the statute.
Plaintiff's counsel in their brief take, explicitly, two contradictory positions. One is that the "will contains the signatures of at least two witnesses as required by the laws of this State"; the other is that "these minutes (of delivery) constitute its attestation." The only rational inference is *583 that the second of these propositions is advanced as a theory because the first one fails as a fact. But taking the theory at its utmost, it becomes obvious that the same contention could be made with equal ingenuity of a variety of courses and procedures. To accept them would be to make an improvident departure from the statute, how improvident is best illustrated by what has already occurred in this case.
If, as counsel argues, the minutes of delivery "constitute" the attestation, it follows that these minutes, since it is the minutes that were signed, must be a part of the will as a document. That is, such must be the case if we are to have compliance with the statute. It will not do to theorize things into what they are not. The statutory requirement in this particular is entirely physical and extremely simple. There is no provision for any attestation separate and apart from that which is to be evidenced upon the will. So, either the witnesses subscribed their names to the will or they did not; and either the minutes of delivery relied upon as constituting the attestation are an unseparated feature of the will as a document or they are not. Since the answers to these alternatives are both obviously in the negative, how can it be urged that there is compliance?
If what was done in the Italian proceedings of delivery amounts to attestation, the same or similar acts and doings performed anywhere else, including our own jurisdiction, must likewise suffice. Nothing is gained by the fact that the procedure in question was lawfully carried out at the place of its performance, so long as it comes short of legality here where probate is sought. We may be sure, I think, that if what plaintiff relies on for attestation of the Italian will had its origin in this jurisdiction, and being therefore of necessity unofficial, it would never occur to counsel to contend as they do.
The step which plaintiff asks the court to take is a very long step indeed. A dispensing with the requirement that the will be immediately, visually and accessibly present to the witnesses would ipso facto involve a dispensing with the whole sanction of attestation as the statute conceives it. It *584 would certainly involve a dispensing with the subscription by the witnesses of their names upon the will. For what is the difference between a testator's declaring to the witnesses that his last will is concealed "in this packet" and his declaring to them, for example, that it is at home in his safe; and what is the difference between the signing by the witnesses of the minutes that are offered as the attestation in this case, and their signing any other sort of writing separate from the will to the effect that they are witnessing thereby the existence of the will which testator declares he has made? The fact, as we presume it to be, that in the present instance there ensued the continued official custody of the identified packet in which the will was said to be contained avails nothing, since compliance with the law of New Jersey cannot be established by compliance with a different law elsewhere.
Demonstration that what we are dealing with is not a technical refinement but a thing important and substantial should require nothing more than what has happened in this case. The executors procured a duly authenticated copy of the Italian will. That was not enough. They could have disclosed to themselves the real situation, so in effect it is said, had they examined an additional, separate and incidental procedural record of whose existence they had no reason to be aware, and which apparently was not brought to the notice of plaintiff's own counsel until some seven years later. Indeed, it so happens that the executors did have one procedural record, that of publication, but there was still the other, the record of delivery. It remains only to notice that such deception would have been rendered impossible by compliance with the simple requirements of the New Jersey statute.
While it is entirely irrelevant as matter of law to point out that among the beneficiaries of the New Jersey will are charities that could be materially harmed by exacting of them at this late date the return of their legacies, it is not irrelevant to show thereby the practical and potential vice resident in the very nature of plaintiff's theory of valid attestation. R.S. 3:2-46 could not operate with safety were plaintiff's contention to prevail.
*585 Apparently it has not been understood by plaintiff's counsel that the minutes of delivery as above recited are all there is to support their contention. I say this because of what follows. Annexed as an exhibit to the complaint before me is a copy of the Italian will. At the bottom thereof, quite as if it were a part of the will itself, is the following: "The foregoing will is now signed on each half sheet, together with the minutes of deposit, by the requesting party, by the witnesses and by me, the notary, on each half sheet of paper and is attached to this instrument together with the minutes aforesaid under Exhibits B and C and the same file number. The requesting party declares that the estate left by the decedent," etc. This language, because it indicates on an insufficient view a signing of the will by witnesses, could be indeed misleading. There are certain things, however, that make its true meaning entirely obvious. In the first place, the language in question is found only in the minutes of publication and relate, therefore, solely to proceedings had after testator's death. It refers to nothing upon the face of or within the will and is no part of the will. The signing referred to is the signing of the publication minutes. This is manifest from the reference to the signing by the "requesting party," that is the party by whom, under the Italian procedure, the will is caused to be withdrawn from custody and to be published and probated; and also from the recital of the requesting party's estimate of the value of the estate that decedent left. In the second place, what the quoted language follows in both transcripts of minutes is not the will but a full quotation of the will as it is embodied in the minutes transcribed, the language in question being no part of the quotation and therefore no part of the will. Its position outside of the quotation is also shown in the exhibit attached to the complaint. And in the third place, there is throughout both transcripts what appears to be a translator's correction whereby the passage "the foregoing will is now signed" is changed to read "the foregoing testamentary schedule is now signed."
The complaint is dismissed.