151 A.2d 518 (1959)
In re PANOUSSERIS' WILL.
In re the Last Will and Testament of Epaminondas Anastassiou Panousseris, A/K/A Epaminondas Panouseris, A/K/A Parry Panosaris.
Orphans' Court of Delaware, New Castle.
April 30, 1959.
Clyde M. England, Jr., of Killoran & VanBrunt, Wilmington, for proponents.
William S. Potter and Joseph H. Geoghegan, of Berl, Potter & Anderson, Wilmington, for caveator.
*519 STIFTEL, Judge.
Mr. Panousseris, the decedent, died domiciled in Athens, Greece, on September 3, 1956, survived by his wife, Antigone, and a son, Ernest, who are the proponents of the alleged will, and a married daughter, Voula, who is contesting the probate of the alleged will. At his death, the decedent *520 owned property in Greece but also was seized of a five-twelfths interest in real estate located at 715 and 717 Market Street, Wilmington.
Three years before he died, on December 7, 1953, Mr. Panousseris instructed his attorney to prepare a will for him. Later that same day, the decedent signed his name, Epaminondas Panousseris, at the end of a paper prepared and written by his lawyer purporting to be his will. No one else signed the writing and only the attorney was present and saw the decedent sign his name. After signing the purported will, decedent folded it and placed it in an envelope; and then the envelope was sealed with five wax seals which bore the personal imprint of the decedent. Two days later, on December 9, 1953, the decedent took the sealed envelope to the office of Mr. George Prapas, a notary public, resident of Athens, and there, in the presence of the notary and three witnesses, the decedent stated to the witnesses that the envelope contained his "secret will" and, in the presence of the three witnesses, handed the sealed envelope to the notary public. The witnesses did not see the contents of the envelope and consequently did not see the signature of the decedent on the purported will, which was enclosed therein. When the notary public received the envelope, he wrote on the outside thereof the following recital, required by the Greek Civil Code:
"In this cover, enclosed the secret last will and testament of Epaminondas Anastassiou Panousseris, landowner, domiciled at Athens, handed over me, the Notary Public in and for Athens, Demetrius G. Prapas.
"In Athens, this Wednesday, the 9th ninth day of the month of December in the year 1953, nine hundred and fifty three, filed by my act under number 19254 of even date.
"Above note, having been confirmed, were signed by the Testator, the witnesses and by me, the Notary Public."
The Testator then signed the envelope "Epan. Panousseris", the three witnesses signed and the notary affixed his signature.
The notary public then drew up a "Deposition of a Secret Last Will and Testament", the agreed translation of which follows:
"In Athens, this Wednesday, the 9th ninth day of the month of December, in the year 1953, one thousand nine hundred and fifty three, in my Notarial Office, located in a house owned by the heirs of C. Kapsis, G. Stavrou st. No. 6, 
"Before me, Demetrius George Prapas, Notary Public in and for Athens, residing and holding office in Athens, and in the presence of the witnesses Eleftherious Andreou Samothrakis, a lawyer, Alexander George Politis, a process-server, residents of Athens, George Stavrou 6, and Constantine George Koulopoulos, a lawyer, resident of Athens, G. Stavrou 8, Greek citizens, of age, Christian, subject to none of the exceptions or disabilities, related in the relevant art. of the Civil Code of law, nor to any other exception by the law, 
"Appeared
"Epaminondas Anastassiou Panoussieris, a land owner, a resident of Athens, Tenedou 13, born in Nissiani-Mantinia, to me known, suffering none of the disabilities, related by the Civil Code of law nor any other legal exception, 
"Who handed over to me, in the presence of the said witnesses, a sealed envelope, containing his holograph last will and testament, which he declared that he was wishing to deposit with me, as Notary Public, according to article 1738 of the Civil Code of Law.
"I questioned the appearer, in the presence of the witnesses, whether he *521 had written his last will and testament in his own handwriting and he replied to me that it had been written by the lawyer Stelious Triandaphyliou and signed by him, the Testator.
"Said last will and testament was sealed in an envelope by the Testator, at the rear side whereof five seals had been affixed, of sealing wax bearing his personal seal, and, I, the Notary Public, received it in the presence of the witnesses and attached it to the present act, after having written at the rear side of the envelope what is laid down by the article 1742 of the Civil Code of law, i. e., the relevant note, which has been signed by the Testator and by the witnesses, plus the number of my said act.
"Mention is made here that during the whole continuance of the drawing up of the present act, the collaborating persons were present and that all provisions of article 1730 paragraph 2, articles 1738, 1741 and 1742 of the Civil Code of law, have been observed.
"In Witness Whereof, these presents were drawn up, which, having been read aloud and distinctly, in the hearing of all, and, confirmed, are being signed by all and me.
"To receive for dues and fees of these presents drachmae 35.000 thirty five thousand.
"The Testator:
 "Epam. Panoussieris (s)
 "The Witnesses:
 "Elefth. Samothrakis (s)
 "Alex. Politis (s)
 "Const. Koulopoulos (s)
"The Notary Public:
 "(L.S.) D. Prapas."
After the decedent's death, the notary sent the purported will to the Court of First Instance in Athens for probate, and on the 18th of November the following statement under oath was made by the witnesses who signed the envelope and deposition:
"In Athens, and in the House of Justice of the Peace, this Wednesday, the 18th day of the month of November, in the year 1957, one thousand nine hundred and fifty seven, at ten o'clock, 
"before us, Theod. Mihalopoulos, Justice of the Peace in and for Athens, and in the presence of the Clerk, Chr. Yannacopoulos, 
"pursuant to the petition of Anastassios Panousseris, son of Epaminondas, domiciled at Athens, card of his identity No. 2368 of the Aliens Department of Athens, 
"Appeared:
"the witnesses: 1) Constantine G. Koulopoulos, born in Psachna, Euobea, in the year 1906, domiciled at Athens, G. Stavrou st. No. 8, lawyer, holder of the card of identity under number 16587/45, issued by the IId Police Station at Athens, 2) Eleftherious Andreou Samothrakis, born in Athens, in the year 1904, domiciled at Athens, Stadiou 31, lawyer, holder of the card of identity under number 13438/45, issued by the IXth Police Station of Athens, and 3) Alexander G. Politis, born in Megapo, Laconia, in the year 1906, domiciled at Athens, Artemidos 68, process-server, holder of the card of identity under number 6243/45, issued by the XXIIId Police Station of Athens, all Christian Orthodox, who having set their right hands on the Holy Gospels, made the following oath:
"We make oath, being well aware of the penalties accruing by law to perjury that:
"Epaminondas Anastassiou Panousseris handed over, to the Notary Public in and for Athens, Demetrius Prapas, in his Notarial Office, situated G. Stavrou st. No. 6, on December 9, 1953, in *522 our presence, acting as witnesses, an envelop, containing, according to his statement, his secret last will and testament, regarding that handing over of the envelop, the Notary Public drew up his act No. 19254 on the envelop itself, which act was signed by Epaminondas An. Panousseris, in the presence of the Notary and of ourselves, who saw him setting his signature on the envelop, and in continuance we, too, and the Notary signed on the envelop. We know the above by direct knowledge.
"So may God and His Holy Gospels help us.
"In Witness Whereof, these presents were drawn up, which having been read and confirmed are signed:
"The Affiants:
 "C. Koulopoulos (s)
 "El. Samothrakis (s)
 "Alex. Politis (s)
 "The Clerk:
 "D. Yannopoulos
 "The Justice of the Peace:
 "Th. Mihalopoulos"
The attorney who prepared the will for decedent on December 7, 1953, signed the following verified statement after the death of Mr. Panousseris:
"I, subscribing Stelios Anast. Triandafyllidis, lawyer of Athens, do hereby attest that on December 7 seven in the year 1953, Epaminondas Anast. Panousseris, in his domicil, here, Tenedou st. No. 13, dictated to me, and I wrote, his last will and testament, which I saw him sign before me.
"He filed that last will and testament with the Notary Public in and for Athens Demetrius Prapas, on December 9, 1953, as his secret last will and testament, which has been published, after his death, by the Court of first instance of Athens, at its sitting of September 19, 1956, through its Record No. 4971. In Athens, December 18, 1957.
"The Attestor: (S.S.) Illegible signature."
The will was duly probated and published by the Court of First Instance on September 19, 1956. The will left nothing to the daughter, Voula, but mentioned that she had already received a home and personal effects as a dowry at the time of her marriage.[1] All other property, including the real property in Wilmington, was left to decedent's wife, Antigone, and his son Anastassios. If the will is probated in Delaware, the son and decedent's widow will receive the entire estate, but if the foreign will cannot be proved in Delaware, then decedent will have died intestate as to the lands in Delaware, and the daughter and son will each receive a one-half share of the Delaware realty, subject to the statutory dower rights of the decedent's widow, Antigone.
Mr. Panousseris died domiciled in Greece. His will was a valid one under Greek law. Martindale Hubbell, Law Digest, Greece, 1958. The disposition of any personal property located in Delaware would be controlled by the Greek will. 12 Del.Code, § 1308. However, the Greek will would have no control over land located in Delaware unless it is valid under Delaware law, since the law of Delaware determines the validity of a will which devises land located in Delaware. Pennel's Lessee v. Weyant, 2 Har. 501, 503; Equitable Trust Co. v. Ward, 29 Del.Ch. 206, 48 A.2d 519; Restatement of the Law of Conflicts of Law, 1934 Ed., § 249.
*523 Since decedent's lands are in Delaware, his paper writing, which was accepted in Greece as his legal will, can not be probated in Delaware unless the Greek will complies with 12 Del.Code, § 102, which provides that:
"Every will, whether of personal or real estate, must be in writing and signed by the testator, or by some person subscribing the testator's name in his presence and by his express direction, and attested and subscribed in his presence by two or more credible witnesses, or it shall be void."
The section contains three requirements: (1) That the instrument be in writing; (2) that it be signed by the testator or by some person subscribing the testator's name in his presence and by his express direction; it need not be signed in the presence of the witnesses, but must be acknowledged by the testator to them; and (3) that it be attested and subscribed in the presence of the testator by two or more credible witnesses. Sutton v. Sutton, 5 Har. 459, 460.
The paper writing of Mr. Panousseris will be sustained as a legally executed will if it is possible to do so consistently with the requirements of the above statute. At the same time, it must be understood that this court has no power to substitute its judgment for that of the legislature as to the essentials of a will. This court can not lower the statutory requirements of Section 102, nor can it add any requirements or conditions that do not exist in the statute. The problem does not involve the intention of the decedent. In construing this statute, the court can only be concerned with the intention of the legislature. The question, then, is not what did the decedent intend to do, but what has he done in the light of the statute. In re Howell's Estate, Cal.App., 317 P.2d 69; 50 Cal.2d 211, 324 P.2d 578, 582.
Every one of the requisites of Section 102 must be obeyed; they are not set forth in the alternative. The instrument inside the envelope is in writing, and it is signed by the decedent. The first two requirements of the statute are, therefore, met. The question, then, is whether the third requirement has been met.
No one signed the foreign document prepared by the decedent's lawyer except the decedent. Two days later decedent presented himself to the notary and delivered the envelope, already closed and sealed. The seals were five in number, each bearing the personal imprint of the decedent. The envelope could not be opened nor its contents removed without breaking or altering the seals. At the time of the delivery to the notary, the decedent declared to the notary and the witnesses present that the envelope contained his "secret will". The envelope was then signed by the decedent, the three witnesses and the notary.
The real question for this court to decide is whether the envelope constitutes a component part of the will of the decedent. The problem is sometimes referred to as either one of integration or incorporation by reference.[2] 25 Col.L.Rev. 878, 888; Atkinson on Wills, 2d Ed., Chapter 9, Secs. 79, 80.
The statute in the subject case requires only that the witnesses attest and subscribe the will. No place for their signatures is prescribed. However, the language of the statute was interpreted in Owens v. Bennett, 1850, 5 Har. 367, to mean that the attesting witnesses must subscribe their names below the dispositive provisions of the will, even though the Court indicates *524 critically that the testator, as a result of a previous decision, was not required to sign his name after the dispositive provisions, but could sign it anywhere in the body of the will. Annotation 29 A.L.R. 891; 1 Page on Wills, Lifetime Ed., Sec. 371, n. 17.
Generally speaking, the witnesses' signatures should be on the same sheet of paper as that of the decedent or on some sheet which is physically connected thereto. In re Dunlap's Will, 87 Okl. 95, 209 P. 651; In re Baldwin's Will, 146 N.C. 25, 59 S.E. 163; In re Estate of Moro, 183 Cal. 29, 190 P. 168, 10 A.L.R. 422. In this case, the proponents reason that the envelope and the document were merely separate sheets which could be used to make up the will and are physically attached and should be read together; and if read together, the signatures of witnesses would appear thereon and the will would be legal and valid.
A will may be written on separate sheets of paper, as long as the sheets of paper are connected. No particular mode of connection between papers is prescribed by Delaware law. In some jurisdictions, physical connection was held adequate where the paper signed by the witnesses was attached to that signed by the testator by a string, In re Goods of Horsford, L.R. 3 P. & D. 211 (1874); by a pin, In re Goods of Braddock, 1 P.D. 443 (1876); by a staple, In re Estate of Moro, 183 Cal. 29, 190 P. 168, 10 A.L.R. 422; by a clipless fastener, In re Dunlap's Will, 87 Okl. 95, 209 P. 651; and also where the sheets were supposed to be fastened by mucilage but failed to hold because of a defect in the mucilage, Bolton v. Bolton, 107 Miss. 84, 64 So. 967. See also, 10 A.L.R. 429, 431; 94 C.J.S.Wills § 195.
There are few reported cases dealing with the subject of whether an envelope may be physically connected with a document so that the writings on the envelope may be integrated or incorporated with the document which it contains. English courts have more frequently upheld the validity of wills which consisted of a sealed envelope and an enclosed paper which disposed of the property of the deceased. In the case of In re Nicholls, 2 Ch. 11, 11 British Ruling Cases 844 (1921) (Annotation, p. 850), the testator executed a "secret" or "closed will" in accordance with Chilean law. The document was signed by the testator alone, with no witnesses, and placed by him in an envelope, which he sealed. The envelope was signed by the testator, five witnesses and a notary public. The Court held that the document and the envelope together constituted the will of the testator according to Chilean law and that the document was sufficiently executed to bring it within the English Wills Act so as to pass real property in England. The Court stated that having regard to the law under which the will was made and the transaction took place, it was impossible to treat the envelope as divorced from the document which it contained; and it further mentioned that the recital on the envelope made by the notary was more than a record of the proceedings at the place where the will was executed and a mere statement that the will of the testator was to be found within the envelope, but that the endorsement was a statement by the testator, made in the presence of the required number of witnesses, that the document contained in the envelope was his will and that his property was to be disposed of in accordance with the terms of that document.
The Court, in Re Nicholls, relied upon Re Almosnino, 164 Eng.Rep. 835 (1859), where the testatrix wrote a letter giving directions as to the disposition of her property, which she signed and sealed up in an envelope. Subsequently, upon being advised that the instrument should have been attested by two witnesses, she caused the following memorandum to be written on the outside of the envelope:
"I confirm the contents written in the enclosed document in the presence of Richard Morse and Sarah Praeger, this 29th day of December, 1858."
*525 The Court held that evidence was admissible to show what document this confirmation referred to, and that the evidence was sufficient to show that the paper found in the envelope, after the seal was broken, was the "enclosed document" to which the deceased referred in the memorandum on the envelope and that it therefore should be received for probate as the will of the deceased.
The Court, in Re Estate of Mann, 2 All Eng. 193, (1942), Noted 11 Fordham L. Rev. 320, stated that if an unattached paper was to be admitted at all, there is very much to be said in favor of the envelope, which has a far closer relationship to a document which it encloses than a second and wholly disconnected piece of paper. The Court further stated that envelopes are, by their nature, designed to have what might be described as a dependent and secondary existence rather than an independent and primary life of their own. Compare with Estate of Bean, 2 All Eng. 348, Probate 83 (1944), where the English Court refused to probate a form will at the end of which the testator omitted to place his signature in the space provided therefor. He had written his name on the back of the will and on the envelope by filling in the spaces on the envelope on which were printed the words: "The last will and testament of .......... of .......... to .......... Executor, Date ..........". The Court distinguished In re Mann, supra, by explaining that the testator did not intend by writing his name "George Bean" on the envelope to make this his signature to the will, whereas in the Mann case this intent was present. The Court further stated that the written name on the envelope was for identifying the contents of the envelope only. 1 Jarman on Wills, 8th Ed., p. 129.
Courts in America, with certain exceptions, have not been as liberal as the British courts in similar situations. In re Lee's Estate, D.C.D.C., 80 F.Supp. 293, the testatrix signed a paper written for her by another, intending such paper to be her will. The paper was placed in an envelope and the envelope was sealed. On the front of the envelope, the testatrix' daughter wrote: "My Last Will and Testament". Two nurses were present when the act was performed and affixed their signatures on the envelope under the statement, as witnesses. After the death of the testatrix, the envelope was opened by a bank trust officer and the envelope showed no evidence of having been disturbed. It was held that the paper and the envelope could not be probated because the signatures of the witnesses were not on the same sheet of paper as that which contained the testatrix' own signature, nor were they on a paper physically connected with that sheet. Criticized: 20 Miss.L.J. 399; 37 Geo.L.J. 651. Approved: 18 U. of Cinn.L.Rev. 234. The Court relied on the Maryland case of Shane v. Wooley, 138 Md. 75, 113 A. 652, since the District of Columbia law was based on the Maryland common law. In the Shane case, a stronger case for probate may have been established than in the Lee case because the witnesses signed across the seal of the envelope. However, probate was denied. The Court considered that the envelope was not physically connected with the paper in the envelope so as to make it a legal and valid will. In both the District of Columbia and Maryland cases, no particular manner of connection was prescribed by law.
The Delaware statute stems from the English statute of frauds, Hudson v. Flood, 5 Boyce 450, 94 A. 760. The New York and New Jersey statutes follow the more rigid English statute of wills (1 Vic. Ch. 26, Sec. 9 (1837)). Note: 25 Corn. L.Q. 469, 473.
In Re Perrine's Will, 109 Misc. 459, 180 N.Y.S. 333, 334, the Court held that there was no valid execution of an instrument purporting to be the testatrix' will, which was written by her and signed at the end. The will contained no attestation clause, and it was placed in an unsealed envelope on which was written: "Last will and testament of" followed by the testatrix' name and the names of two other persons designated *526 as witnesses, and a date added to the envelope which was four years after the time the instrument offered for probate was written. It was held that the witnesses who signed their names on the outside of the envelope did not sign at the end of the will as required by law.
In Vogel v. Lehritter, 139 N.Y. 223, 34 N.E. 914, a testatrix, who owned real estate in New York, executed an instrument in Germany disposing of all her property. She signed the instrument in the presence of a notary and enclosed it in an envelope, which she sealed. Two witnesses and the notary signed the envelope to certify that it contained the will of the testatrix "according to her oral declaration". A separate instrument was executed repeating the statement contained on the envelope. It was signed by the testatrix, the witnesses and the notary and was sealed by the notary with his seal. The Court held that this was not a valid will under the New York law.[3] The Court stated, at page 917 of 34 N.E.:
"* * * The written evidence submitted to the court shows without contradiction that she signed a paper as her will, and deposited it in the envelope, and everything done thereafter by her or the notary, so far as the writing shows, was done for the purpose of identification alone. * * * Hence the claim that the paper in the envelope is thus incorporated with and does form a part of the final writing, and all the papers are to be construed as forming the will of the testatrix. The claim might be well founded if the final writing had been executed as a will."
This case dealt primarily with the separate declaration of the testatrix where her signature and the signatures of the witnesses appeared. The signature of the testatrix did not appear on the envelope. The Court merely refused to consider that the separate declaration became incorporated with the will.
In Re Di Persia's Estate, 9 N.J.Super. 576, 75 A.2d 833, a will probated in Italy was offered for probate in New Jersey after another will had already been probated in New Jersey for the same testator. There was no evidence that a separate envelope had been signed, but an attempt was made to integrate a separate declaration on which the signature of the testator, witnesses and notary appeared. The Court held that the witnesses merely signed a declaration attesting receipt and delivery of the will to the notary but did not sign the will itself and, therefore, there was insufficient compliance with the New Jersey statute providing for the attestation of wills, N.J.S.A. 3A:3-2. The facts in the case indicate that neither the testator nor the witnesses or the notary signed the envelope but subscribed their names to the minutes. The Court stated that what was witnessed was a depositor's statement that the will did exist and that it was contained in the sealed packet.
In Re Tyrrell's Estate, 17 Ariz. 418, 153 P. 767, 768, the testatrix did not sign a purported holographic will in her hand but instead signed the envelope after an inscription which read: "This is my last and only Will. To be opened and acted upon by the Officers of a Humane Society in Phoenix." The Arizona Court held this was an invalid holographic will. It explained that the statute, A.R.S. §§ 14-121, 14-123 did not state where the signature was to be placed on the instrument, but the placing of the signature on the envelope was not placing it on the instrument, that the writing on the envelope was neither dispositive nor testamentary in character. The Court *527 further explained that the instrument which was dispositive and testamentary in character was not signed. The Court saw no connection between the envelope and the instrument inside the envelope in that the envelope lacked all the essential features of the will. Noted: 14 Mich.L.Rev. 522. There are other cases in the United States where courts have refused to consider the envelope as a paper which can be considered physically connected with the document which had been placed inside the envelope. Warwick v. Warwick, 86 Va. 596, 10 S.E. 843, 6 L.R.A. 775; In re Poland's Estate, 137 La. 219, 68 So. 415; In re Manchester's Estate, 174 Cal. 417, 163 P. 358, L.R.A.1917D, 629, Ann.Cas. 1918B, 227; Soward v. Soward, 62 Ky. 126.
Some courts in the United States have been more liberal in allowing the envelope to be considered as a part of the will. In Johnston v. King, 250 Ala. 571, 35 So.2d 202, the testatrix drew an instrument consisting of a single sheet of paper; then in the presence of a notary public, three witnesses observed the instrument with the testatrix' signature thereon and she acknowledged it as her will. The document was then placed in an envelope. A separate instrument was prepared by a notary and signed by the testatrix and the attesting witnesses. The instrument and the envelope containing the alleged will were both placed in another folder which was deposited with certain officials. The probate of the will was contested on the basis that the Alabama statute, Code 1940, Tit. 61, § 24, which requires at least two witnesses not only to attest the execution of a will but also to subscribe their names thereto, was not complied with. The Court held that the attestation was a part of the will itself and, therefore, was sufficient under the statute. In the Johnston case, the envelope had been unsealed at all times. The separate instrument of attestation, which was signed by the testatrix and the three witnesses was attached by a cord to the unsealed envelope and its contents.
In Alexander v. Johnston, 171 N.C. 468, 88 S.E. 785; 11 British Ruling Cases 850, the Court upheld an unsigned holographic instrument which was enclosed in a sealed envelope on which was inscribed "Julia W. Johnston Will". The Court declared the holographic will was valid because the identity of the testator was established by the handwriting on the envelope and on the paper inside of the envelope, and by the physical connection by the indorsement and the paper enclosed plus the sealing of the envelope. Accord: Fosselman v. Elder, 98 Pa. 159, 54 A.L.R. 938. See also: In re Harrison's Estate, 196 Pa. 576, 46 A. 888.
Full compliance with the statutory requirements for the execution of wills is necessary to minimize the opportunities for acts of fraud once the testator's lips are sealed. Owens v. Bennett, 5 Har. 367; 1 Page on Wills, 3rd Ed., § 237. The procedure in Greece likewise prevents fraud, probably to an even greater degree than does our statute. However, the fact that under Greek law there is practically no possibility for the commission of fraud, and the fact that in the principal case it is clear that no fraud has been found, would be no excuse for non-compliance with our statute on wills.
Is the signed document in the envelope and the envelope one instrument? The exact meaning of the language on the envelope is not clear. It appears to identify the contents of the envelope as the will of the decedent and explains that the envelope was handed over to the notary. The testator, the witnesses and the notary then signed the envelope as a part of the "handing over" ceremony.
The proponents argue that the recital on the envelope is more than evidence of the "turning over" of the envelope by the decedent, and that it is in reality a statement, made by the testator in the presence of the adequate number of witnesses, that the document inside of the envelope is his will and that he wishes the notary to retain *528 the envelope and its contents in accordance with Greek law. Proponents further contend that when the decedent signed the envelope he intended to confirm and acknowledge its contents to the witnesses who were present and that they thereupon attested and subscribed the envelope as part of the will, and thereupon complied with the requirements of our statute of wills.
The proponents appear to receive support in their argument from in Re Nicholls, supra, where the Court explained a recital on a sealed envelope containing a Chilean will as follows:
"* * * On this footing it has been argued that the indorsement on this envelop is nothing more than a record of the proceedings at Iquique, and a mere statement that the will of the testator is to be found within. I do not feel able so to limit its operation. I think the indorsement is a statement of the testator, made in the presence of the adequate number of witnesses, that the document which is therein contained is his will, and that his property is to be disposed of in accordance with the law under which the will was made and the whole transaction took place, it is impossible, in my opinion, to treat the envelop as divorced from the document which it contains. No question arises as to the identity of the document referred to in the indorsement, and when the testator states, as he has to state immediately before the indorsement on the envelop is signed and attested, that the closed and sealed envelop contains his testamentary dispositions, he is in substance confirming in the presence of the notary and witnesses the contents of the inclosed document."
The conclusion reached hereafter makes it unnecessary for this court to approve or disapprove the reasoning of the Nicholls case. However, it is distinguishable. The Court, in the Nicholls case, based its reasoning on an affidavit of a Chilean barrister which explained the significance of the procedure under Chilean law. There is nothing in the record before this court to show the significance of the writings on the envelope under Greek law. Of even greater importance, however, is the distinct difference between the recital on the envelope in the Nicholls case[4] and the recital in the principal case. The Nicholls recital is not patently a "memorial of delivery of a sealed envelope to the notary. It appears instead to be a confirmation and acknowledgment of the contents of the envelope to witnesses who were present and observed the decedent's testamentary capacity.
If there is any doubt as to the meaning and purpose of the recital on the Greek envelope, it is resolved by examining the separate declaration prepared by the notary and by examining the written sworn statement that the witnesses signed when the will was offered for probate in Greece. *529 The witnesses stated under oath at the time of probate of the Greek will in Athens that:
"Epaminondas Anastassiou Panousseris handed over, to the Notary Public * * * on December 9, 1953, in our presence, acting as witnesses, an envelop, containing, according to his statement, his secret last will and testament, regarding that handing over of the envelop, the Notary Public drew up his act No. 19254 on the envelop itself, which act was signed by Epaminondas An. Panousseris, in the presence of the Notary and of ourselves, who saw him setting his signature on the envelop, and in continuance we, and the Notary signed on the envelop."
The probate statement of the witnesses makes it clear that the decedent signed the envelope as a part of the "handing over ceremony". In the process of delivering the envelope to the notary, he identified its contents. The witnesses did not attest and subscribe the envelope as a part of the execution of the will of the decedent but witnessed the delivery and handing over of the envelope to the notary by the decedent, in accordance with the requirements of Greek law. I conclude that the writings on the envelope, including the signatures of the witnesses thereon, cannot be considered to be incorporated with the papers in the envelope so as to form the completed will of the decedent.
The conclusion reached makes it unnecessary to decide whether or not an envelope may, under circumstances that are different from those that are presented here, be considered physically or internally connected to the papers enclosed within it so as to form the will of the decedent. Such a decision need not be made here where the witnesses signed a "memorial of delivery of the envelope" to the notary and did not attest and subscribe the will itself.
It is also unnecessary to decide if decedent, under the facts of this case, could make a legal acknowledgment within the meaning of the language in Lodge v. Lodge's Will, 2 Houst. 418, 422, where the Court said that a will is valid where a testator signs and then, either by himself or through another, directly or impliedly, requests the witnesses to subscribe the memorandum of attestation, which they do in his presence, even though they did not see the testator's signature, nor knew the nature of the instrument they attested. See the meaning given these words in Re Kemp's Will, 7 W.W.Harr. 514, 186 A. 890, 894. Here the testator was not trying to acknowledge the instrument as his will to the witnesses but merely identifying the contents of the envelope to them. The witnesses were not impliedly or expressly requested to attest and subscribe the will but a separate document indicating a proper handing over of the will by the decedent to the notary and the receipt of the instrument by him.
This is an unfortunate situation where the intent of the testator must be defeated because of statutory noncompliance. The cure is a statutory enactment to avoid a recurrence.
The decision of the Register of Wills denying probate is affirmed.
NOTES
[1] The Will has the following language of interest:

"In case my daughter Voula shall not respect my present will and shall raise any claims, I ordain that she be compelled to contribute her dowry and receive thereafter as inheritance only the amount corresponding to her lawful share. I wish and demand of my heirs to keep united and love each other after my death."
[2] Integration is a term used to mean writings which form part of a single written memorial. Wigmore, Evidence, 3d Ed., Sec. 2401. Incorporation by reference is the expression used whereby a testamentary document, if in existence at the time a will is executed and if sufficiently identified in the will may, though neither attested nor subscribed, be probated as a part and parcel of a validly executed will.
[3] Section 44, New York Decedent's Estate Law, now provides that a will probated in a foreign jurisdiction and recorded in New York is equivalent to proving the will in New York, where real estate is located therein. 13 McKinney's Consol. Laws, c. 13, Decedent's Estate Law, § 44. In re Tamburri's Will, 198 Misc. 809, 100 N.Y.S.2d 647, 650.
[4] The recital on the Nicholls envelope (11 British Ruling Cases, at p. 845), reads:

"Will. In Iquique, Republic of Chile, on the 7th day of January, 1915, before me, Francisco Javier Hurtado, Notary Public of this Department, and in the presence of the competent witnesses who will be named at the end hereof appeared Mr. James Mayne Nicholls, a person of full age domiciled in this place, who, in my opinion and in that of the witnesses, is in the full possession of his mental faculties, and stated That within this cover or closed and sealed envelope his testamentary dispositions are contained. Thus the Testator stated in the presence of the witnesses, Francisco M. Jeffery, Nitrate Merchant, Antonio Zavala, Advocate, Estaban Carcasson, Nitrate Owner, Augustin Arrieta, Advocate, and George W. Wright, Merchant, all persons of full age domiciled in this Port, with exception of Senhor Zavala who resides at Pisagua. This act was read in an audible voice by the undersigned, the Testator and the witnesses all heard it, the whole being carried out in one act. By way of evidence they sign as I certify. J. Mayne Nicholls, Fras. M. Jeffery, Antonio A. Zavala, M. G. W. Wright, E. Carcasson. Before me, F. J. Hurtado. Here is a seal of the Notarial Office."